Richard W. Morris, J.D., Ph.D. -- AzBar 002009
**MORRIS LAW FIRM, pllc**
13951 West Grand Ave., Ste 203
Surprise, AZ 85374-2436
Tel 623-583-1040
Fax 623-748-4339
email: rmorris@mrlaw.us

Marc J. Victor, Esq. -- AzBar 016064
**Marc J. Victor, P.C.**
3920 South Alma School Road, Suite 5
Chandler, Arizona 85248
Tel 480-755-7110
email: marc@attorneyforfreedom.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, Inc., *et al*, | ) ) ) ) | Civil Action No. 2:11-cv-00495-ROS |
| Plaintiffs, | ) ) | RESPONSE TO MOTION TO DISMISS COMPLAINT |
| v | ) | |
| Janice K. Brewer, Governor of the State of Arizona, | ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiffs Freedom From Religion Foundation (FFRF), Valley of the

Sun Chapter of the Freedom From Religion Foundation, Mike Wasdin,

Michael Renzulli, Justin Grant, Jim Sharpe, Fred Greenwood, Chrystal Keshawarz, and Barry Hess, hereby tender their Response to Defendant Brewer's Motion to Dismiss (the Motion), filed September 13, 2011, Document 27.

For purposes of consistency, Plaintiffs will address the Motion in the order presented.

## INTRODUCTION

Plaintiffs contend the proclamations at issue, like the symbol of the Christian cross embedded in the seal of City of Gilbert,[1] convey a message. Unlike a symbol, the proclamations' messages are unambiguous. Plaintiffs also  adopt the Introduction in the Motion for Partial Summary Judgment (the MSJ), filed September 30, 2011, as Document 30, beginning on page 3.

## BACKGROUND

Plaintiffs adopt the Statement of the Case in the MSJ beginning on page 4.

## LEGAL STANDARD

Plaintiffs agree with the legal standard pertaining to the issue of standing as set forth beginning with line 19 on page 3 of the Motion. Plaintiffs meet or exceed the standards required.

_____

[1] *ACLU v. Dunham*, 112 F.Supp.2d 927 (2000).

## ARGUMENT

I.  **PLAINTIFFS HAVE ARTICLE III STANDING**

    A.    **The Issuance of a Government Proclamation That
                 Cannot Be Ignored Does Confer Standing.**

Plaintiffs have not argued that Governor Brewer's proclamations force Plaintiffs to pray. This is not the issue at bar, and illustrates the Fallacy of Diversion in the creation of such a straw man argument.

Plaintiffs claim Governor Brewer's Proclamations directly molested them by reason of their modes of religious worship or lack of religious belief in violation of the Arizona and United States Constitutions and 42 U.S.C. § 1983. Such molestation need not take the form of coercion, direct threats, or physical confrontation to confer standing as Plaintiffs explain below.

Defendant Brewer concentrated the focus of the Motion upon the U.S. Constitutional aspects, substantially without mention of either the Arizona Constitution and Section 1983. The only mention of these two issues was in passing as part of the Introduction to the Motion.

The failure to cite legal authorities and evidence constitutes waiver of the point. *See Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana*, 854 F.2d 1538, 1548 (9th Cir. 1988) (applying Fed.R.App.P. 28(a)(4), finding waiver of issue); see also *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir.

2006) (party must cite both legal authority and supporting factual evidence to avoid waiver of point); *Perez v. Illinois*, 488 F.3d 773, 776-777 (7th Cir. 2007) ("perfunctory and undeveloped arguments are deemed waived").

To the extent the Defendant's Motion fails to even mention the Arizona Constitution or Section 1983 regarding standing or any other issue, and fails to cite legal authority, the issue as to opposing standing under either should be disregarded and the opposition deemed waived.

Dealing with Section 1983, the Ninth Circuit, *en banc*, in concluding Catholics and a Catholic Advocacy group had standing to bring a Section 1983[2] action against the City and County of San Francisco and two individual members of their board of supervisors following their issuance of a non-binding resolution deemed offensive by the plaintiffs, the Court cited cases for each of the following illustrated situations:

> "Standing was adequate for jurisdiction in Establishment Clause cases in the Supreme Court in the following contexts: prayer at a football game, a crèche in a county courthouse or public park, the Ten Commandments displayed on the grounds of a state capitol or at a courthouse, a cross display at a national park, school prayer, Bible reading at public school, and a religious invocation at a graduation. No one was made to pray, or to pray in someone else's church, or to support someone else's church, or limited in how they prayed on their own, or made to worship, or prohibited from worshiping, in any of these cases. The Court treated <u>standing (and therefore the concreteness element of standing) as</u>

---

[2] The Arizona Constitution was not an issue in the case.

<u>sufficient in all of these cases, even though nothing was affected
but the religious or irreligious sentiments of the plaintiffs.</u>"
[Emphasis added.]

*Catholic League for Religious and Civil Rights v. City and County of San
Francisco*  624 F.3d 1043, 1049 -1050 (C.A.9 (Cal.), 2010), citing cases in
footnotes[3] to support each situation named. An extensive footnote, number
20, ends with: "For example, government speech must comport with the
establishment clause. *Pleasant Grove City v Summun*, 129 S. Ct. 1125, 1131-31
(2009).

The pertinent part of Section 1983 reads:

Every person who, under color of any [law] ... custom, or usage, of
any State ... subjects ... any citizen of the United States ... to the
deprivation of any rights, privileges, or immunities secured by the
Constitution ... shall be liable to the party injured ...

The governmental proclamations are on their face under of color of law,

custom, or usage, and deprive these Plaintiffs rights, privileges, or immunities

secured by the Constitution. Simply put, the "non-binding" nature of the

Governor's proclamations is not relevant to the question of standing in the

case at bar.

---

[3] *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 313-14, 120 S.Ct. 2266, 147
L.Ed.2d 295 (2000), *Cnty. of Allegheny v. ACLU*, 492 U.S. 573, 109 S.Ct. 3086, 106
L.Ed.2d 472 (1989), *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604
(1984), *Van Orden v. Perry*, 545 U.S. 677, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005),
*McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005),
*Salazar v. Buono*, --- U.S. ----, 130 S.Ct. 1803, 176 L.Ed.2d 634 (2010), *Engel v. Vitale*,
370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962), *Wallace v. Jaffree*, 472 U.S. 38, 105
S.Ct. 2479, 86 L.Ed.2d 29 (1985), *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203,
83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), *Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649,
120 L.Ed.2d 467 (1992).

**B.      Plaintiffs Allege Injuries Sufficient to Prove They Have Standing.**

Plaintiffs agree hypothetical plaintiffs not injured by the Governor's Proclamations do not have standing. However, these are not hypothetical plaintiffs. They suffered an actual injury—the Governor's proclamations marginalized their religious views in the past and threaten to do so in the future, if not enjoined.

Plaintiffs are molested by these religious proclamations because of their mode of religious worship or lack of same. The injuries, as stated in their declarations,[4] take the form of, among others, affirmatively avoiding contact with the proclamations as they are disseminated throughout the media by turning off televisions and radios; skipping pages of print media; fearing other Arizona citizens influenced by the proclamations as well as fearing government and law enforcement officials; the stigma and denigration they face when being made religious outsiders to the religion proclaimed by the state. Even those Plaintiffs at bar who are believers take deep offense at the proclamations. Some are offended by the idea the Governor has proclaimed their holy scriptures and their God require public support; the rest, that they are not the same scriptures or even the same god that has been referenced in

---

[4] MSJ Exhibits 19-28.

the proclamations.

The injuries of these Plaintiffs are particularized, concrete, and personal which unequivocally accords them standing.

1.   <u>Plaintiffs Do Allege Alteration of Conduct Based on the Proclamations</u>.

The arguments by the Governor are based upon law from the Seventh Circuit—not binding upon this Court. However, even under such analysis, Plaintiffs have standing.

Each Plaintiff submitted a Declaration in support of their MSJ declaring they have altered their conduct in response to the Proclamations. Plaintiffs variously complain of being forced to turn off their televisions, flip past pages in the papers and, even alter their speech in conversations so as to avoid encountering the news and effects of these Proclamations in their lives. *See* MSJ Exhibits 19-28.

The changes in conduct by Plaintiffs go beyond mere disagreement with the Proclamations and are more serious than the alterations of conduct previously held to confer standing by the Ninth Circuit and the United States Supreme Court to confer standing. *See* cases cited in footnote 3, *supra*.

2.   <u>The Individual Plaintiff's Feelings of Offense Are Sufficient to Establish Standing</u>.

The individual Plaintiffs' feelings of offense are considerably more than

disagreement. These Plaintiffs allege they have been relegated to the status of second-class citizens and have been made unable to state their views openly for a myriad of reasons—including fear of reprisal by government and law enforcement officials. *See* MSJ Exhibits 19-28.

The Ninth Circuit has encountered the Governor's interpretation of *Valley Forge Christian Coll. V. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464 (1982), and rejected it:

> One has to read the whole *Valley Forge* sentence quoted, and not stop at "psychological consequence," to understand it. A "psychological consequence" does not suffice as concrete harm where it is produced merely by "observation of conduct with which one disagrees." But it does constitute concrete harm where the "psychological consequence" is produced by government condemnation of one's own religion or endorsement of another's in one's own community.

*Catholic League,* supra, at page 1052.

The Ninth Circuit continued with examples.

> For example, in the school prayer and football game cases, nothing bad happened to the students except a psychological feeling of being excluded. Likewise in the crèche and Ten Commandments cases, nothing happened to the non-Christians, or to people who disagreed with the Ten Commandments or their religious basis, except psychological consequences. What distinguishes the cases is that in *Valley Forge,* the psychological consequence was merely disagreement with the government, but in the others, for which the Court identified a sufficiently concrete injury, the psychological consequence was exclusion or denigration on a religious basis within the political community."

*Catholic League,* supra, at page 1052.

The harm alleged by Plaintiffs here stretches beyond mere disagreement. Each Plaintiff asserts alterations and restraints in speech and conduct as well as the psychological harm that such a reduction in status has brought them. *See* MSJ Exhibits 19-28.

Plaintiffs' injuries are genuine, concrete, and particularized. Each individual Plaintiff establishes an individual Article III standing independently. Thus, each Plaintiff has a right to be heard and evaluated on their merits.

3.     <u>FFRF Has Representational Standing</u>.

Just as the individual Plaintiffs have standing, so does FFRF. The Governor devotes considerable time discussing direct standing. This, too, is the Fallacy of Diversion in that direct standing is not in question. The issue is representational standing.

For example, the mission statement of the American Civil Liberties Union (ACLU) states the ACLU has been the guardian of liberty, working in the nation's courts, legislatures and communities to defend and preserve individual working rights and liberties guaranteed by the Constitution and the laws of the United States.[5] It has been accorded representative standing

---

[5] *About Us*, ACLU, http://www.aclu.org/about-aclu-0 (Last visited Oct. 2, 2011).

in this Court on similar circumstances. *ACLU v. Dunham*, supra.

In a similar manner, FFRF is a national membership organization whose purposes are limited to promoting the fundamental constitutional principle of separation of church and state and to educate on matters relating to nontheism.

In any comparable situation in which the ACLU would have standing, so too, does FFRF. The issue at bar could also be argued in its representative capacity by the ACLU, if at least one plaintiff were a member of the ACLU. In which case, both would have representational standing.

Plaintiffs agree with the legal standard put forth by Governor Brewer on page 10 of her Motion to Dismiss, lines 17-20. Applying that standard here reveals (1) at least one FFRF member has standing; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires an individual member's participation. The FFRF, therefore, has representational standing.

    4.    <u>The Court Should Not Take Guidance from the Seventh Circuit's Ruling That FFRF Lacked Standing in its Challenge to the National Day of Prayer</u>.

The Ninth Circuit sets the controlling law here, and that Court has established precedent regarding the issue of standing to resolve the issue in the case at bar. *Catholic League*, supra, and cases cited therein.

Further, the facts of the Seventh Circuit case cited by Defendant are different from the case at bar.

While FFRF is a plaintiff in both cases and state sanctioned calls to prayer are at issue in both cases, that is where the similarities end and the differences begin. For example:

(1) Governor Brewer is not directed by Congress to declare a state day of prayer and therefore is not acting within the scope of a legislative mandate.

(2) Plaintiffs are confronted by their local government with whom their connection is significantly greater than the federal government, thereby making their injury greater.

(3) Plaintiffs at bar *are* addressing the First Amendment of the U.S. Constitution and section 1983 violations, as were the Wisconsin plaintiffs. Plaintiffs here, however, also address violations of Article XX, Section First, and Article II, Section 12 of the Arizona Constitution, which afford the Plaintiffs greater protections from molestation on account of their mode of worship or lack of same, and which prohibit the appropriation or application of public money to religious establishment, respectively. These are far more stringent requirements for governmental conduct, lessening the standing burden placed on Plaintiffs in comparison.

(4) Plaintiffs have testified to their injuries and altered conduct, which

are unique and distinct from those alleged by the Wisconsin plaintiffs. *See* MSJ, Exhibits 19, 21-28.

Plaintiffs argue this Court should not take guidance from the Seventh Circuit, but should follow controlling precedent of the Ninth.

II.    **PLAINTIFFS' DECLARATORY RELIEF CLAIMS ARE NOT MOOT AND DO NOT SEEK AN ADVISORY OPINION**.

Defendant presents an amusing argument. Rephrased, she states she cannot be restrained from doing what has been done and, because she has not decided if she will ever do it again, she cannot be enjoined from doing it in the future. Under such analysis, no injunction would ever be granted.

Of course Governor Brewer cannot be enjoined from doing something she already did. She can only pay damages for violating the law. Plaintiffs are asking only for attorneys fees and costs for her illegal past actions. To grant this relief, the Court must find her past actions to violate the law. Perhaps here is where Defendant misunderstands Plaintiffs' claims when she asserts Plaintiffs ask for an advisory opinion.

The Governor can be restrained in the future and her course of conduct in the past justifies this Court in issuing an injunction enjoining her from issuing any more Day of Prayer proclamations in the future.

Further, Plaintiffs dispute the Governor's assertion that this court

cannot provide meaningful relief regarding the past proclamations. A condemnation by this Court of the Governor's prior proclamations serves notice to government officials in Arizona that they are not free to molest Plaintiffs and other Arizona citizens of differing religious persuasions because of those differences. It may also begin a "healing process" for those citizens the Governor has already harmed by reaffirming their equal status and protection before the law, as opposed to a second-class status making them each the "odd man out" in the political sphere.

The Governor implies in her Motion that decisions to issue further prayer day proclamations are not yet made. Her past conduct belies this statement. *See* MSJ, Exhibits 4, 6, and 7. The Governor cannot claim she does not know if she intends to issue additional proclamations of this nature because she is outspoken about her support for the day of prayer. She has a history of issuing such proclamations, which have become tradition in her administration.[6]

If she truly does not intend to issue another day of prayer proclamation, then she should have no objection to the injunction sought by Plaintiffs to enjoin her from doing that which she is not intending to do in the first place.

Defendant cites the District of Columbia Court in *Newdow v. Bush*.

---

[6] *See* MSJ Exhibits 2, 3, 4, 5, 6, 9, and 10.

Plaintiffs urge the court to reject the reasoning given as inapplicable. No conceivable future proclamations emanating from the state which calls upon citizens to pray could possibly be constitutional, no matter how worded.

This Court is not asked to speculate as to the content of future prayer day proclamations, nor should the Court be forced to monitor the Governor's future choice of words. There simply should be no such proclamations at all because to issue official religious dicta is to violate the law.

## <u>CONCLUSION</u>

The Plaintiffs in this case suffered, and continue to suffer, individually and personally as set forth above by direct violations of the Constitutions of the United States and the State of Arizona, as well as 42 U.S.C. § 1983.

The proclamations at issue, like the symbol of the Christian cross embedded in the seal of City of Gilbert, convey a message. Unlike a symbol, the proclamations messages are unambiguous calls to prayer.

Plaintiffs ask the Court to deny the Motion to Dismiss.

Respectfully submitted.

Date: October 3, 2011.                    Morris Law Firm, pllc

/s/ *Richard W. Morris*

By: Richard W. Morris, J.D., Ph.D.
Attorneys for Plaintiffs

## **Certificate of Service**

I certify on October 3, 2011, I electronically transmitted the above

document to the Clerk's Office using the CM/ECF Systrem for filing and

transmittal of a Notice of Electronic Filing to the CM/ECF registrants on

record.

/s/ *Richard W. Morris*